**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:26-CV-00479-GNS-HBB**

**JASON POINTER** **PLAINTIFF**

**VS.**

**STATE FARM FIRE AND CASUALTY COMPANY** **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

**Background**

Defendant State Farm Fire and Casualty Company has filed a motion to bifurcate trial on the Plaintiff's contractual and bad faith claims, and to stay discovery on aspects of the latter (DN 11). Plaintiff Jason Pointer has responded in opposition (DN 12), and State Farm has replied (DN 15).

**Applicable Law**

In cases involving claims both for benefits under a policy of insurance and bad faith on the insurer's part, the defending insurance carrier frequently asks that trial and discovery on the contract claim be bifurcated from and precede resolution of the bad faith claim. Many opinions in this judicial district, as well as the Eastern District and the Sixth Circuit, have addressed whether bifurcation is appropriate. They arrive at varying conclusions because a "Court considers this issue on a case-by-case basis." *Lake Vill. At Landis Lake Council of Co-Owners, Inc. v. Erie Ins. Co.*, No. 3:24-CV-704-BJB-LLK, 2025 U.S. Dist. LEXIS 46322, at *2 (W.D. Ky. Mar. 14, 2025).

Courts resolve the question of whether bifurcation is appropriate by weighing two competing interests, each touching upon judicial economy. On the side of the ledger favoring bifurcation stands the possibility that resolution of the contract claim in favor of the insurance carrier will render the bad faith claim moot. Consequently, bifurcation of trial can eliminate the risk that the jury will hear unnecessary and potentially confusing proof on the bad faith aspect. Moreover, bifurcation of discovery can avoid incurring unnecessary expense and prevent unmerited incursion into privileged matters.

Standing on the opposite side of the ledger disfavoring bifurcation is the prospect that the proof related to whether the insurance carrier breached the contract and whether it acted in bad faith is so "inextricably intertwined" that there is no benefit to be had from dividing one from the other and, to the contrary, bifurcation would simply duplicate trial and discovery on the issues.

These considerations apply in both the third-party and first-party insurance claimant context. "In either case, the principal questions are the same: (1) will disposition of the underlying contract claim dispose of the entire case, and (2) are the factual and legal issues 'inextricably intertwined' with the bad faith claims?" *Lake Vill. At Landis Lake Council of Co-Owners, Inc.*, 2025 U.S. Dist. LEXIS 46322, at *3 (citation modified).

While a federal court sitting in diversity applies state substantive law, it nonetheless applies federal procedural law. *See Cook v. Greenleaf Township*, 861 F. App'x 31, 34 (6th Cir. 2021). Specifically, Fed. R. Civ. P. 42(b) governs the issue of bifurcation in such cases. *Nationwide Mut. Fire Ins. Co. v. Jahic*, No. 3:11-CV-00155, 2013 U.S. Dist. LEXIS 1798, at *4 (W.D. Ky. Jan. 7, 2013). Fed. R. Civ. P. 42(b) provides: "For convenience, to avoid prejudice, or to expedite and

economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." The decision whether to bifurcate is within the discretion of the district court and is dependent on the facts and circumstances of each case. *See Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996). Further, trial courts have broad discretion to "'stay discovery until preliminary questions that may dispose of the case are determined.'" *Gettings v. Bldg. Laborers Loc. 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003) (*quoting Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999)). The moving party bears the burden of showing that bifurcation of a bad faith claim would: "(1) serve the interest of convenience, (2) avoid undue prejudice, or (3) would expedite and economize the judicial proceedings." *Dippin' Dots, LLC v. Travelers Prop. Cas. Co. of Am.*, 322 F.R.D. 271, 274 (W.D. Ky. 2017) (citing *Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007)).

The elements a plaintiff must satisfy to establish a breach of contract claim are different than those necessary to prevail on a bad faith claim. "To prove a breach of contract, the complainant must establish three things: 1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. App. 2009). To prevail on a bad faith claim the Plaintiff must establish: "(1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky.1993) (citation modified). These elements apply regardless of whether the bad faith claim is asserted

under common law or statute. *Blankenship v. Shelter Mut. Ins. Co.*, No. 23-5247, 2023 U.S. App. LEXIS 27637, *12-13 (6th Cir. Oct. 16, 2023). A plaintiff has a "steep burden" in satisfying the *Wittmer* test. *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 584 (Ky. 2021).

**1. The First *Wittmer* Element**

"Kentucky law does not provide a bad-faith cause of action unless the plaintiff can prove that the insurance company had a contractual obligation to pay the claim." *Holloway v. Ohio Sec. Ins. Co.*, No. 3:14-CV-00856-CRS, 2015 U.S. Dist. LEXIS 150746, at *3 (W.D. Ky. Nov. 6, 2015).

> If a bad-faith claimant cannot prevail on the coverage issue, her claim of bad-faith necessarily fails; accordingly, such cases lend themselves to bifurcation under Rule 42(b). *See Brantley*, 2011 U.S. Dist. LEXIS 138111, 2011 WL 6012554, at *2; *Honican v. Stonebridge Life Ins. Co.*, 2005 U.S. Dist. LEXIS 48247, 2005 WL 2614904, at *2 (E.D. KY. Oct. 13, 2005): *accord Davidson v. Am. Freightways*, 25 S.W.3d 94, 100 (Ky. 2000) ("Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute."). Such a finding is important because "whether the resolution of a single issue would be dispositive of an entire claim is highly relevant in determining the efficacy of bifurcation." *In re Beverly Hills Fire Litig.*, 695 F.2d 207, 216 (6th Cir. 1982).

*Erickson v. AIG Prop. Cas. Co.*, No. 5:23-CV-00102, 2024 U.S. Dist. LEXIS 254490, *5 (W.D. Ky. Mar. 18, 2015) (*quoting C.A. Jones Mgmt. Grp., LLC v. Scottsdale Indem. Co.*, No. 5:13-CV-00173-TBR, 2015 U.S. Dist. LEXIS 33430, at *4-5 (W.D. Ky. Mar. 18, 2015)).

Where a question of coverage is a threshold issue, it can be decided "without requiring evidence of Defendant's motive or bad faith." *Lake Vill. At Landis Lake Council of Co-Owners*, 2025 U.S. Dist. LEXIS 46322 at *4. This arises from a distinction between the first two elements of a claim for bad faith set forth in *Whitmer*. The first is that "the insurer must be obligated to pay the claim under the terms of the policy." *Wittmer*, 864 S.W.2d at 890. What does "obligated

to pay" mean? In *Mosley*, the Kentucky Supreme Court observed that "an obligation to pay requires proof that the insured's policy requires the insurer to pay, not that there is liability under the contract, which is analyzed under *Wittmer's* second requirement." 626 S.W.3d at 585. That second requirement is "the insurer must lack a reasonable basis in law or fact for denying the claim." *Wittmer*, 864 S.W.2d at 890. The Sixth Circuit clarified *Mosley's* distinction: "The Kentucky Supreme Court recently explained the difference between the first and second elements: the first element is satisfied by proof that the insured's policy requires the insurer to pay, while the second element requires a showing that 'the insured's liability is beyond dispute.'" *Jeffrey v. Med. Protective Co.*, No. 24-5724, 2025 U.S. App. LEXIS 4793, at *25 (6th Cir. Feb. 28, 2025) (citation modified). Thus, if the policy does not provide coverage for the claimed loss, there can be no obligation to pay and no need to proceed to the second *Wittmer* element, which evaluates whether the insurance company had a reasonable basis for denying the claim. *See e.g. Austin v. Std. Fire Ins. Co.*, No. 2:21-CV-00129 (WOB-CJS), 2023 U.S. Dist. LEXIS 142273, at *17 (E.D. Ky. Aug. 15, 2023) ("For example, an insurer might not be obligated to pay because language in the policy expressly excludes the type of claim at issue.") (citation modified).

Addressing the coverage issue first recognizes that "[b]ifurcation of the trials will avoid the expense of litigating issues that may never arise. Bifurcation also will permit the jury to focus on a single issue at a time, thereby avoiding the introduction of potentially confusing evidence until absolutely necessary." *Underwood v. Ryan*, No. 3:15-CV-700-JHM, 2016 U.S. Dist. LEXIS 69574, at *5 (W.D. Ky. May 26, 2016) (quoting *White v. ABG Caulking Contrs., Inc.*, No. 5:13-CV-00194-TBR, 2014 U.S. Dist. LEXIS 32413, at *4 (W.D. Ky. Mar. 13, 2014)). "[A]

determination of the bad faith issue in conjunction with the contract issue may be prejudicial to [the defendant insurer]; presenting both issues to a jury may unfairly bleed the evidence for one into the evidence for the other." *Sanders v. Motorists Mut. Ins. Co.*, No. 3:08-37-DCR, 2008 U.S. Dist. LEXIS 80021, at *7 (E.D. Ky. Oct. 7, 2008).

Whether to bifurcate discovery is an independent consideration. *Domingo v. Allstate Vehicle and Prop. Ins. Co.*, No. 3:26-CV-275, 2026 U.S. Dist. LEXIS 98896, at *8 (W.D. Ky. May 5, 2026). A court may bifurcate the issues for trial, yet not restrict discovery. *Id.* A motion to bifurcate discovery "is essentially a motion to stay discovery as to the bad faith claims pending resolution of the breach of contract claim." *Id.* "Like bifurcation, '[t]rial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined.'" *Id.* (quoting *Gettings v. Bldg. Laborers Loc.* 310 Fringe Benefits Fund, 349 F.3d 300, 304 (6th Cir. 2003)). "Stay is appropriate where claims may be dismissed based on legal determinations that could not have been altered by any further discovery." *Warner v. State Auto Prop. & Cas. Ins. Co.*, No. 1:18-CV-00168-GNS-HBB, 2019 U.S. Dist. LEXIS 246001, at*8 (W.D. Ky. April 30, 2019) (citing *Gettings*, 349 F.3d at 304)). Moreover, bifurcation of discovery avoids unnecessary disputes over the insurance carrier's claims of work product or other privilege. *Lake Vill. At Landis Lake Council of Co-Owners*, 2025 U.S. Dist. LEXIS 46322 at *5.

**2. <u>The Second *Wittmer* Element</u>**

Where there is no question that a policy provides coverage for the type of loss alleged, facts related both to the insurer's contractual payment obligation and the basis for the insurer's decision not to pay the claim are sometimes inextricably intertwined, in which case bifurcation may serve

no purpose. *Tharpe v. Illinois Nat. Ins. Co.*, 199 F.R.D. 213, 215 (W.D. Ky. 2001). Such intertwining is found when the same evidence proves or defeats both claims. *Id.* More specifically, whether the evidence tending to show there is no obligation to perform under the contract of insurance (the second element of a breach of contract action) will also show that the carrier had a reasonable basis for denying the claim (the second *Wittmer* element). *See Warner*, 2019 U.S. Dist. LEXIS 246001, at *7; *Woody's Rest., LLC v. Travelers Cas. Ins. Co. of Am.*, No. 5:12-CV-92-JMH-REW, 2014 U.S. Dist. LEXIS 2305, at *7-8 (E.D. Ky. Jan. 9, 2014).

### 3. **The Third *Wittmer* Element**

A breach of contract claim asks three questions: was there a contract, did the defendant breach the contract and did the plaintiff incur damages as a result? The third element under *Wittmer*, however, is not analogous to the contract questions, rather it asks whether the insurer "either *knew* there was no *reasonable* basis for denying the claim or acted with *reckless* disregard for whether such a basis existed." *Wittmer*, 864 S.W.2d at 890 (emphasis added). This is because a claim for bad faith seeks exemplary damages beyond what a breach of contract award remedies. "A bad faith claim under Kentucky law is, essentially, a punitive action. The tort of bad faith is non-existent under our law, unless the underlying conduct is sufficient to warrant punitive damages." *Hollaway v. Direct Gen. Ins. Co. of Miss.*, 497 S.W.3d 733, 739 (Ky. 2016). "[T]here is no such thing as a 'technical violation' of the [Unfair Claims Settlement Practices Act], at least in the sense of establishing a private cause of action for tortious misconduct justifying a claim of bad faith." *Wittmer* at 890. Examples of intentional misconduct or reckless disregard of the rights of an insured sufficient to constitute bad faith can include:

> misrepresenting policy provisions, using the claimant's financial struggles as leverage, focusing the investigation on evading the claim, refusing to settle until the claimant releases the insurer from liability arising from its misconduct, "lowball" offers that barely exceed damages, extensive delay in settling or requesting records, refusing to disclose policy limits, and other troubling claims-handling practices.

*Mobley v. Progressive Direct Ins. Co.*, 686 F. Supp. 3d 570, 577 (W.D. Ky. 2023).

Cases discussing bifurcation often characterize the litigation as consisting of two phases – first, whether there is coverage and, second, whether the insurance company had a reasonable basis for denying the claim. "[E]xtrinsic evidence, claims manuals, guidelines, and reinsurance-related documents are not relevant to Phase One coverage-only discovery, absent a finding of ambiguity, as the interpretation of a contract is a question of law for the courts." *CC Metals & Alloys, LLC v. Am. Int'l Specialty Lines Ins. Co.*, No. 5:22-CV-00055-CHB-LLK, 2025 U.S. Dist. LEXIS 95808, at *3 (W.D. Ky. May 20, 2025) "Generally speaking, claims handling and how investigators went about their investigation of the claims is a topic of discovery reserved for Phase Two in bifurcated litigation." *Id.* at * 10 (citation modified). However, opinions tend to merge the second and third *Wittmer* elements into the generalized "phase two" aspect of bad faith litigation and discovery. This can be problematic, because discovery and the proof necessary to satisfy the third *Wittmer* element that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed may inquire far beyond that necessary to establish the second *Wittmer* element. Such inquiry can involve information and documents related to similar claims involving other adjustors, the insurer's internal policies and procedures manuals, training manuals, reserve setting procedures, employee compensation procedures and personnel files. *See Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 812-815 (Ky. 2004). Thus,

there are, in essence, three phases of a bad faith claim, each corresponding to one of the *Wittmer* elements. While discovery on the breach of contract claim and the second *Wittmer* element may sometimes be inextricably intertwined, it does not automatically follow that the third *Wittmer* element is also intertwined.

**<u>Application of the Law to the Present Case</u>**

State Farm summarizes the relevant facts:

> This claim arises out of an accidental total fire loss to the home of Pointer in Central City, Kentucky, on June 30, 2025. On the date of loss, Pointer had a homeowners insurance policy with State Farm. State Farm paid the coverage limits of $186,114 for Pointer's damaged personal property and prior to suit had paid over $74,000 in additional living expenses while Pointer and his family were without housing. State Farm inspected the scene and prepared a structural damage estimate for $221,109 to rebuild the home and made an initial actual cash value payment of $152,375.01 pending the repairs. When Pointer presented a contract to purchase a manufactured home from Austin Homes for $228,377, State Farm paid replacement cost benefits of $60,648.21.
>
> Pointer completed debris removal himself by clearing the scene and presented invoices and estimates for that work for consideration. Based on these invoices and other materials, State Farm made an additional structural payment of $28,595.37 on December 23, 2025, bringing the total paid under Coverage A to $241,618.59 – just under the structure limits of $248,153 on the date of loss.
>
> Pointer then retained counsel who presented an estimate to rebuild the home from Kenland Construction dated February 4, 2026, for $322,000. Pointer's counsel claimed that additional payments were owed under this estimate because State Farm used inaccurate measurements, did not include proper flooring and other materials, improperly evaluated painting requirements, failed to account for code-required repairs and upgrades, and took excessive depreciation.[1]

State Farm asserts that the contract and bad faith claims should be bifurcated both for trial and discovery, noting that Pointer must first establish that it had an obligation to pay before it can

1 DN 15 pp. 1-2.

be subject to a claim for bad faith. As Pointer points out, however, State Farm does not dispute that it had an obligation to pay under the policy, and therefore the first *Wittmer* element, which when disputed favors bifurcation, is not in question. As State Farm itself notes in its Reply "there was property coverage for the fire loss in question, and the jury will decide whether State Farm had an obligation under the policy to pay the additional benefits claimed by Pointer. Evidence on this issue will admittedly involve some of the same evidence that a jury would consider in deciding the first two elements of the bad faith claim."[2] Accordingly, the issues of breach of contract and the second *Wittmer* element are intertwined such that bifurcation on those issues is not appropriate in this case.

As to the third *Wittmer* element, State Farm argues:

> State Farm concedes that in this case some of the same evidence will be presented by the parties to establish the first two elements of a bad faith claim – a contractual obligation to pay and whether State Farm had a reasonable basis for its claim handling decisions. Evidence as to the third element, however, which addresses an insurer's conduct in determining whether it was reckless, intentional, outrageous, and punitive, would be irrelevant to the narrow contract issues in this case relating to specific items such as cost of repairs, code items, depreciation, and deductions for prior losses to the home.[3]

The undersigned concurs. Pointer attempts to justify inclusion of proof related to the third *Wittmer* element in trial and discovery by arguing that State Farm made the evidence relevant by asserting various affirmative defenses, such as estoppel, clean hands and failure to mitigate and that it otherwise answered that it had acted in good faith.[4] Pointer quotes *State Farm Mut. Auto.*

---

2 *Id.* at p. 3.
3 *Id.* at p. 5.
4 DN 12 p. 9.

*Ins. Co. v. Edwards*, 670 S.W.3d 873, 880 (Ky. 2023) for the proposition that "the insurer's 'defense to the [underlying] claim is, in large part, the basis for [the] bad faith claim.'"[5] What *Edwards* actually said was "State Farm's defense *to the tort claim* is, in large part, the basis for Irvin's bad faith claim." *Id.* (emphasis added). Consequently, *Edwards* did not indicate that the insurer's affirmative defenses specifically formed the basis for the plaintiff's bad faith claim. *Id.* Fed. R. Civ. P. 12(b) requires that any affirmative defenses be plead in a responsive pleading. It would be inequitable to hold that an insurer pleading affirmative defenses in answer to a breach of contract claim thereby automatically calls its claims-handling practices into question for purposes of the bad faith aspect of the suit.

In sum, the undersigned finds that the breach of contract claim and the second *Wittmer* element are intertwined, but the same does not apply to the third *Wittmer* element. The interests of justice are best served by allowing discovery to proceed jointly on the issues of breach of contract and the second *Wittmer* element, but bifurcating trial and holding in abeyance discovery associated with the third *Wittmer* element. As to whether all aspects of the case should ultimately be tried before the same jury, which Pointer requests as alternative relief, in *Domingo*, 2026 U.S. Dist. LEXIS 98896, at *7-8, Judge Jennings concluded that this is a decision best deferred until later in the case. The undersigned agrees. Moreover, such a decision may be more appropriately addressed by the presiding district judge.

**WHEREFORE**, State Farm Fire and Casualty Company's motion at DN 11 is **GRANTED IN PART AND DENIED IN PART**. Trial and discovery on the Plaintiff's breach

---

5 *Id.*

of contract and bad faith claims may proceed jointly as to breach of contract and the second *Wittmer* bad faith element. Trial on the third *Wittner* element is bifurcated and discovery is stayed. Whether all issues will ultimately be tried before the same jury is deferred for later consideration.

November 23, 2026

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies: Counsel